SRM

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| **United States of America,**<br>Plaintiff/Respondent<br>-vs-<br>**Larry Sayetsitty,**<br>Defendant/Movant | CR-94-0243-PCT-RCB<br>CV-05-1580-PCT-RCB (JI)<br><br>**REPORT & RECOMMENDATION**<br>**On Motion to Vacate, Set Aside, or**<br>**Correct Sentence Pursuant to**<br>**28 U.S.C. § 2255** |

## I. MATTER UNDER CONSIDERATION

Movant, following his conviction in the United States District Court for the District of Arizona, filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 on May 26, 2005 (#366). On July 22, 2005 Respondent filed its Response (#369). Movant filed a Reply on August 17, 2005 (#373).

The Movant's Motion is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 10, Rules Governing Section 2255 Cases , Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

Because this matter may be resolved on the basis of a statute of limitations, the review of the factual and procedural background will generally be limited to those matters relevant to a timeliness determination.

**A. FACTUAL BACKGROUND**

In disposing of Movant's direct appeal, the Ninth Circuit summarized the facts as

- 1 -

follows:

> Larry and Joe Sayetsitty are brothers and members of the Navajo Nation. They spent the night of June 24, 1996, drinking and socializing in various locations. At approximately 4 a.m. on June 25, they drove in Larry's truck to a party at Diversion Dam, a site within the Navajo Indian reservation near Kayenta, Arizona. While at Diversion Dam, Larry became involved in an argument with the decedent, Jerry Lee Stanley. Joe joined the argument, and a brief fight ensued before it was broken up by others.
>
> * * *
>
> At approximately 5:20 a.m., Stanley stopped at the residence of a friend, Kent Parrish, who lived on the reservation. Larry pulled up behind Stanley's truck and told Joe, "the guy parked in front of us, when he comes by here, throw him down." As instructed, Joe grabbed Stanley by the shoulders as he came by and threw him to the ground. Both Larry and Joe then kicked Stanley. One witness saw Joe kick Stanley in the head, and another saw Larry kick him in the head eight to ten times, with the motion and strength one might use in kicking a football field goal. Finally, Stanley's friend came outside and broke up the encounter. Joe and Larry then left the Parrish residence in Larry's truck and drove to Larry's residence. Stanley's friend drove Stanley to the hospital, where he was pronounced dead. He was later determined to have died of head injuries.

*U.S. v. Sayetsitty,* 107 F.3d 1405, 1407-1408 (9th Cir. 1997).

**B. PROCEEDINGS AT TRIAL**

Movant and his brother were indicted for the premeditated murder of Jerry Lee Stanley (#16). The court granted their motion to sever (#81). Movant was then tried and convicted of second-degree murder (#233). On October 25, 1995, Movant was sentenced to 225 months in prison followed by 48 months of supervised release (#271).

**C.  PROCEEDINGS ON DIRECT APPEAL**

Movant and his brother both appealed (#275 & 281). Movant's appeal was denied on the merits on February 28, 1997 and the mandate issued April 25, 1997 (#291).[1] *See U.S. v. Sayetsitty,* 107 F.3d 1405 (9th Cir. 1997).

/ /

/ /

---

[1] Co-Defendant Joe Sayetsitty's appeal was granted, and he was subsequently retried and convicted of involuntary manslaughter (#324).

## D. PROCEEDINGS ON POST-CONVICTION RELIEF

**Requests for Documents** - Movant wrote a letter dated September 23, 1999 to the district court judge, Hon. Broomfield, requesting that Movant be provided with a full docket sheet, judgment and commitment order, transcripts, and copies of motions. The Court treated this letter as a motion to produce documents, and denied the motion by an Order filed October 13, 1999 (#351). That order noted that "inasmuch as the court has an extra copy of its docket it will direct the clerk to send it and a copy of the judgment and commitment to defendant." The Court's docket reflects that this was completed by the Clerk of the Court.

On October 18, 1999, Movant responded with a letter (#352) indicating that he had "received my docket sheet and judgment and commitment order," and again requesting transcripts. The Court construed this letter as a motion to produce, and again denied it. (Order 11/8/99, #353).

Movant filed a Notice of Appeal (#354) challenging those denials. That appeal was dismissed for lack of jurisdiction on May 18, 2000 (#356).

**Delayed Appeal** - On November 3, 2003, Movant filed a Motion to Extend Time to File Late Appeal (#357), arguing that counsel had failed to file an opening brief, that as a result Movant had been denied his right to appeal, and thus requesting leave to file a late appeal. Movant sent a letter to the Clerk of the Court, filed March 31, 2004 (#360), stating that:

> ... counsel claimed on several occasions that yes he had filed the appeal. However, it was almost three years later that I learned in fact that the appeal has been dismissed for failure to file a timely brief.

On April 14, 2004, Movant then filed a third request for delayed appeal, a Motion for Extension of Time for Excusable Neglect (#361). Movant again reiterated his concerns about counsel's failure to pursue his appeal:

> Defendant wrote to the attorney to find out what has happened to his case. No response. After several letters, and NO RESPONSE, on April 26, 2000 defendant discovered his appeal was dismissed?

On May 3, 2004, Movant filed a fourth request, a Motion for Case Discovery (#352), citing to the Ninth Circuit's opinion on his appeal, and asking for copies of his case records.

On May 7, 2004, the Government filed a single Response (#363) to all of these

1  requests, arguing that defense counsel had indeed filed a brief in the appeal, and that the appeal
2  had been denied on the merits, not dismissed.

3  The Court denied Movant's motion to file a delayed appeal, and denied the related
4  motions as moot.  (Order 5/26/04, #364.)

## E. PRESENT FEDERAL HABEAS PROCEEDINGS

Movant instituted the present habeas proceeding by filing his Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 on May 26, 2005 (#366).  Movant's motion asserts six grounds for relief: (1) newly discovered alibi evidence; (2) evidence of actual innocence in form of medical testimony that Movant was physically incapable of kicking; (3) sentencing errors; (4) ineffective assistance of counsel in arguing sufficiency of the evidence; (5) prosecutorial misconduct in presentation of perjured testimony; (6) violations of *Blakey*, *Booker*, and *Fantan*.

In addition, Movant argues that his motion is timely because he did not discover his appeal had been denied until May 24, 2004 (#366 at 7).  Movant further argues that he is entitled to equitable tolling because: (1) his efforts to be provided discovery in the case were denied; (2) he has contracted an illness (*id.* at 11).  Movant further argues that he has newly discovered evidence, which justifies a delayed motion to vacate (*id.* at 14).  Movant also argues that he is, in any event, actually innocent (*id.* at 9).

Respondents filed their Response (#369), arguing that the Motion is: (1) untimely; (2) procedurally defaulted; (3) without merit; and (4) and subject to a non-retroactivity analysis.

Movant filed a Reply (#373) on August 17, 2005.  In addition to repeating arguments from his Motion, Movant's Reply asserts that he is mentally incompetent, and obligated to know tribal laws.

## III. APPLICATION OF LAW TO FACTS

Respondent argues that the Motion must be dismissed as untimely.

**Applicable Statute of Limitations** - The statute governing motions to vacate provides:

- 4 -

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--
>   (1) the date on which the judgment of conviction becomes final;
>   (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>   (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>   (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

**Ordinary Application of Statute** - The one-year statute of limitations on motions to vacate generally begins to run on "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(1). "Finality attaches when [the Supreme] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522 (2003). "We hold that, for federal criminal defendants who do not file a petition for certiorari with this Court on direct review, §2255's one-year limitation period starts to run when the time for seeking such review expires." *Id.* at 532.

Movant did not seek certiorari, but had 90 days after entry of the judgment of the Court of Appeals to file a petition for writ of certiorari with the U.S. Supreme Court. Rule 13, Rules of the Supreme Court of the United States. "The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate." *Id.* Accordingly, for purposes of the statute of limitations in 28 U.S.C. §2255, the movant's judgment of conviction became final 90 days after the Ninth Circuit's decision on February 27, 1997, *i.e.* on May 29, 1997. The statute of limitations commenced running on that date, and expired one year later, on May 29, 1998.

**Filing Date** - Movant's motion was filed May 26, 2005. However, under the "prison mailbox rule," for purposes of calculating statutes of limitations in federal habeas proceedings, a prisoner's filings are deemed "filed" when they are delivered to prison officials for mailing.

- 5 -

*See Anthony v. Cambra,* 236 F.3d 568 (9th Cir. 2000). Here, Movant's certificate of service reflects that his documents were deposited in the prison mailbox on May 17, 2004. However, this must be a typographical error, because Movant's attached Application to Proceed *In Forma Pauperis* is dated and certified as of May 17, 2005. Therefore, the undersigned presumes for purposes of this Report and Recommendation that Movant's motion was mailed on May 17, 2005, and therefore treats it as having been filed on that date. Even so, Movant's motion would still be almost seven years delinquent.

**Effect of Delay in Notice on Appeal** - Movant argues that his motion should nonetheless be considered timely because his appellate attorney was non-communicative and the Court would not grant him discovery, and thus he did not receive notice of the dismissal of his appeal, which he characterizes as a denial of due process and a violation of court rules. If the lack of notice is construed as an "impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States," then Movant's one year would not commence until that impediment was removed. 28 U.S.C. § 2255(2). Here, that impediment would have been removed at least by October 18, 1999, when Movant responded with a letter (#352) indicating that he had "received my docket sheet." That docket sheet reflected the filing of the mandate from the Ninth Circuit Court of Appeals on April 25, 1997 (#291), which affirmed Movant's convictions. If this later date, October 18, 1999, is used, Movant's one year would have expired on October 18, 2000, and his Motion would still be over four years delinquent.

Movant argues that he is entitled to equitable tolling as a result of the delay of notice of the denial of his appeal. In *U.S. v. Battles*, 362 F.3d 1195 (9th Cir. 2004), the Ninth Circuit held the statute of limitations under 28 U.S.C. § 2255 may be equitably tolled. Movant bears the burden of showing that equitable tolling is appropriate. *Miranda v. Castro,* 292 F.3d 1063, 1065 (9th Cir.2002). To be entitled to such tolling, Movant must "demonstrate that 'extraordinary circumstances beyond [his] control [made] it impossible to file a petition on time and the extraordinary circumstances were the cause of his untimeliness.'" *Battles*, 362 F.3d at 1197 (quoting *Laws v. LaMarque,* 351 F.3d 919, 922 (9th Cir. 2003)). A number of

1  courts have held that equitable tolling is appropriate to preserve the claims of a petitioner, who
2  through no fault of his own, fails to receive notice of the disposition of an appeal or
3  post-conviction proceeding, and consequently delays his federal habeas filing. *See, e.g.,*
4  *Brandon v. U.S.*, 89 F.Supp.2d 731 (E.D.Va. 2000), *Plowden v. Romine*, 78 F.Supp.2d 115
5  (E.D.N.Y. 1999); *Vasquez v. Greiner,* 68 F. Supp.2d 307 (S.D.N.Y. 1999); and *Baskin v.*
6  *United States,* 998 F.Supp. 188 (D.Conn. 1998).

7  Movant argues that he received the order denying his appeal for the first time on May
8  24, 2004. (Reply, #373 at 1.) Here, given the extreme lapse of time, and Movant's receipt of
9  the court's docket showing the denial of his appeal, it is implausible that his failure to receive
10  an actual copy of the denial of his appeal was an "extraordinary circumstance" or that it made
11  it impossible for Movant to file until May 24, 2004. Movant offers no explanation for why he
12  did not seek a copy of the appellate court's decision.

13  Assuming *arguendo* that Movant's lack of notice was an extraordinary circumstance
14  preventing him from filing for a time, equitable tolling will not apply if Movant did not
15  continue to diligently pursue filing afterwards. "If the person seeking equitable tolling has not
16  exercised reasonable diligence in attempting to file after the extraordinary circumstances
17  began, the link of causation between the extraordinary circumstances and the failure to file is
18  broken, and the extraordinary circumstances therefore did not prevent timely filing." *Valverde*
19  *v. Stinson*, 224 F.3d 129, 134 (2nd Cir. 2000). Ordinarily, thirty days after elimination of a
20  roadblock should be sufficient. *See Guillory v. Roe,* 329 F.3d 1015, 1018, n.1 (9th Cir.
21  2003). Here, Movant waited almost an entire year before filing. That delay precludes a finding
22  of reasonable diligence, and thus a finding of equitable tolling.

23  **<u>Effect of Physical Illness</u>** - In his Motion, Movant asserts that he has contracted a virus
24  in the prison, resulting in various symptoms. (Motion, # 366 at 11.) However, Movant does
25  not assert how these symptoms commenced, when they terminated, or how they kept him from
26  filing a timely motion. Movant fails to make out a claim for equitable tolling on this issue.

27  **<u>Effect of Mental Incompetency</u>** - Movant asserts that he is entitled to equitable tolling
28  because his "[mental] incompetency is 'OBVIOUS'." (Reply, #373 at 7.) However, Movant

- 7 -

offers nothing to support his claim of incompetency other than making generic argument such as "American Indians are known to have 'this diminished capacity from drinking.'" (*Id.* at 8.) However, Movant concedes "[n]ot all indians but enough to NOTICE."

A habeas petitioner's mental incompetence is not a *per se* reason to toll the statute of limitations for filing a federal habeas petition. Instead, the alleged mental incompetence must somehow have affected the petitioner's ability to timely file a habeas petition. *Nara v. Frank,* 264 F.3d 310, 320 (3rd Cir.2001). Therefore, a habeas petitioner must allege more than the "mere existence of physical or mental ailments" to invoke the equitable tolling of the statute of limitations. *Rhodes v. Senkowski,* 82 F.Supp.2d 160, 173 (S.D.N.Y.2000). Instead, a habeas petitioner has the burden of showing that mental health problems rendered him or her unable to file a habeas petition during the one year limitations period. *Id.* A statute of limitations is tolled by reason of mental illness "only if the illness in fact prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them." *Miller v. Runyon,* 77 F.3d 189, 191 (7th Cir.1996)(internal citations omitted).

Movant has shown himself, through his filings in this Court, that he is sufficiently competent to understand the proceedings, and to marshal arguments and authorities in support of his cause, leading the undersigned to conclude that Movant suffers no mental defect that prevented him from making a timely filing.

Moreover, Movant proffers nothing to show that he himself is incompetent, or that such diminished capacity precluded him from making a timely filing. Movant does not draw a causal connection between any incompetence and the extreme delay evident in this case. Mere conclusory statements in a § 2255 motion are insufficient to require a hearing. *United States v. Hearst,* 638 F.2d 1190, 1194 (9th Cir.1980), *cert. denied*, 451 U.S. 938 (1981).

**<u>Effect of Newly Recognized Rights</u>** - Movant asserts claims arising under the recent line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), proceeding through *Blakely v. Washington*, 542 U.S. 296 (2004), and culminating with *United States v. Booker,* 543 U.S. 220 (2005). *Booker* was not decided until January 12, 2005. Arguably, Movant should be entitled to rely on 28 U.S.C. § 2255(3) to count his one year "from the date

on which the right asserted was initially recognized by the Supreme Court." However, this delayed start is available only "if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(3). Here, the Supreme Court has not made the decisions in the *Apprendi*, *Blakely, Booker* line of cases retroactively applicable on collateral review. To date, the Ninth Circuit has held that none of them are retroactive. *See Reynolds v. Cambra,* 290 F.3d 1029, 1030 (9th Cir.2002) (holding that *Apprendi* does not apply retroactively); *Schardt v. Payne*, 414 F.3d 1025 (9th Cir.2005) (*Blakely*); *United States v. Cruz*, 423 F.3d 1119, 1120-21 (9th Cir.2005) (*Booker*). Consequently, Movant is not entitled to rely upon § 2255(3) to delay the commencement of his one year limitations period.

**Applicability of Tribal Laws** - Movant argues that his situation is extraordinary because, as an American Indian, he is subject to tribal laws, making it all the harder for him to know applicable federal law. (Reply, #373 at 9.) At the outset, it must be noted that a prisoner's *pro se* status is not an extraordinary circumstance. *Felder v. Johnson,* 204 F.3d 168 (5th Cir. 2000). And, "ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing." *Fisher v. Johnson,* 174 F.3d 710, 714 (5th Cir.1999). *But see Gaston v. Palmer,* 417 F.3d 1030, 1035 (9th Cir. 2005)(considering whether lack of "access to legal materials or the prison law library" precluded timely filing). Movant asserts nothing extraordinary about his experience as a Native American that would have precluded him from timely filing. Presumably, Movant would have been subject to tribal laws on various issues. However, defendants living outside a reservation are similarly held to know applicable municipal and county laws, in addition to the more widely applicable state and federal laws. There is nothing extraordinary about Movant's subjection to tribal laws.

**Reliance on *Castro* Opinion** - Movant argues that he is entitled to protection under the Supreme Court's decision in *Castro v. U.S.,* 540 U.S. 375 (2003). (Reply, #373 at 9-10.) However, *Castro* did not deal with the timeliness of a habeas petition, but whether a district court could *sua sponte* construe a federal defendant's post-trial motion for new trial as a motion to vacate, and then later bar a subsequent § 2255 motion as a second or successive

motion.

**Effect of Newly Discovered Evidence** - Movant also asserts claims that he has newly discovered evidence. Section 2255(4) provides that the statute runs from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  In Ground 2, Movant argues that he has newly discovered alibi evidence that the person who eyewitnesses observed Movant kicking was not the victim.

However, it is the "facts" which must be newly discovered, not the evidence to prove the facts. For example, in *Matus-Leyva v. U.S.,* 287 F.3d 758 (9th Cir. 2002), the Ninth Circuit noted that the timeliness of a § 2255 motion asserting that the movant was a juvenile at the time of his conviction was not extended until movant located his birth certificate. The court noted that the movant "knew of the claim and litigated the issue at the time of his original conviction." *Id.* at 761, n.3. Accordingly, the Court noted the invalidity of the Movant's argument that "the statute did not begin to run until he located his birth certificate." *Id.*

While the evidence obtained by Movant since trial, in the nature of affidavits, may have been new to Movant at the time this Motion was filed, the "facts" were not. In his Reply Movant acknowledges that he "raised and told his attorney, twice, at trial" about his alibi evidence. (Reply, #373 at 11.)  Thus these "facts" were available to Movant since trial. Further, the affidavits themselves are all dated in June and July, 2004. Movant offers no explanation for the ten month delay between obtaining those affidavits and finally filing his motion.

Movant also argues his receipt of evidence of actual innocence in form of medical testimony that Movant was physically incapable of kicking. (Reply, #373 at 14-15  However, the records on which Movant bases this argument, showing the installation of a rod in his right femur, date back as early as January 5, 1998, and at the latest April 4, 2003. Moreover, Movant would have known at the time of the crimes what his physical capabilities and medical history were.

**Actual Innocence** - Movant argues that any untimeliness should be ignored because he is actually innocent. (Motion, #366 at 9.)  In *Majoy v. Roe*, while declining to decide the issue, the Ninth Circuit noted that the statute of limitations for state habeas petitioners in 28

U.S.C. § 2244 may be subject to avoidance upon a showing of actual innocence. 296 F.3d 770, 776-777 (9th Cir. 2002). To establish such actual innocence, Movant would be required to meet the standard for actual innocence applied in cases of procedural default. *See Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 114 (2nd Cir. 2000); *U.S. v. Montano,* 398 F.3d 1276, 1285 (11th Cir. 2005). That standard was articulated in *Kuhlmann v. Wilson,* 477 U.S. 436 (1986) as follows:

> [T]he prisoner must "show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt of his guilt."

*Id.,* 477 U.S., at 455, n. 17, quoting Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U.Chi.L.Rev. 142, 160 (1970).

A habeas petitioner asserting his actual innocence of the underlying crime must show "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence" presented in his habeas petition. *Schlup v. Delo,* 513 U.S. 298, 327 (1995). A showing that a reasonable doubt exists in the light of the new evidence is not sufficient. Rather, the petitioner must show that no reasonable juror would have found the defendant guilty. *Id.* at 329. Moreover, a finding of "actual innocence" is not to be based upon a finding that insufficient evidence to support the charge was presented at trial, but rather upon affirmative evidence of innocence. See *U.S. v. Ratigan*, 351 F.3d 957 (9th Cir. 2003) (lack of proof of FDIC insurance in a bank robbery case, without evidence that insurance did not exist, not sufficient to establish actual innocence).

Here, Movant offers scant evidence of his actual innocence, including: (1) the declaration of his sister, Anna Lewis, that at the scene of the crime Movant fought with Harry Stanley Jr., and not Jerry Stanley, the victim; (2) the declaration of Larleen Sayetsitty, Movant's daughter, that Harry Stanley Jr. had been arrested; (3) the declaration of Joanne Sayetsitty, Movant's mother, that the fight was with Harry Jr., and that a third party said the victim was involved in a fight 100 miles away; (4) the declaration of Darlene Sayetsitty,

- 11 -

Movant's wife, that the fight was with Harry Jr., and that an un-identified witness said he was threatened by an agent to lie. Movant submits two unsigned declarations by Gordon Tellis and Mrs. Tellis, and his own unsigned Declaration. In addition, Movant submits medical records that he had a rod in his right femur, and his speculation that medical testimony would say his leg would have shattered. (Reply, #373 at 19-20.)

Movant also makes ado about the lack of blood at the scene, on his clothes, in the vehicle used to transport the victim, etc. (Reply, #373 at 29.) However, the medical examiner, Dr. Vorpahl, reported that the victim died from a brain hemorrhage, which he defined as an internal injury. (R.T. 6/28/95, #247 at 171-172.) The only appreciable external injury, other than bruising and abrasions, were small lacerations on the victim's head (*Id.* at 182-184, 223). Movant offers no evidence to support his claim that the victim's heart had pumped all of his blood out, or that blood splatters should have been present.

In contrast, the Government submitted, *inter alia*, testimony by four eyewitnesses, including: (1) Etta Parrish's testimony that she observed Movant kicking the victim repeatedly (R.T. 6/27/95, #246 at 57-60); (2) Kent Parrish's testimony that he observed Movant kicking the victim repeatedly like one would kick a football, and that he (Kent Parish) drove the victim to the hospital (*id.* at 132-137); (3) Edgar Parrish's testimony that he saw Movant driving away from the scene (*id.* at 235); and (4) the testimony of Joe Sayetsitty, Movant's brother and co-defendant, that he and Movant followed the victim to the Parrish house where Movant instructed him to throw the victim down, and Movant then kicked the victim (R.T. 6/28/95, #247 at 39-41.) This is substantial evidence, and reasonable jurors could easily grant it credibility over the disjointed stories by Movant's family members.

Movant has not established that if his additional evidence would have been presented no reasonable juror could have found Defendant guilty. Thus, assuming actual innocence would avoid the effect of the statute of limitations, Movant has failed to establish his actual innocence.

**<u>Summary</u>** - Based upon the foregoing, the undersigned finds that Movant's motion is untimely under 28 U.S.C. § 2255, and must be dismissed.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed May 26, 2005 (#366) be **DISMISSED WITH PREJUDICE**.

## V. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 10, Rules Governing Section 2255 Proceedings. Thereafter, the parties have ten (10) days within which to file a response to the objections.  Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*).

DATED: April 17, 2006

JAY R. IRWIN
United States Magistrate Judge